15

FILED *re*

JAN 3 1 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

NOT FOR PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re | ) | Case Number: 09-14047-A-7 |
| SUSAN MAE POLK | ) | Date:  October 5, 2011 |
| | ) | Time:  9:00 a.m. |
| Debtors. | ) | Place: Department A, Courtroom 11 |
| | ) | Judge Whitney Rimel |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

A hearing was held on October 5, 2011, regarding the motion by debtor Susan Mae Polk ("Debtor") "for enjoinder to creditor and inferior court;" and "to avoid lien of Contra Costa County." Following the hearing, the court ordered the debtor to file and serve any additional evidence, including a "Claim of Exemptions," by October 26, 2011. The court allowed Contra Costa County to file a reply by no later than November 16, 2011, and the matter was deemed submitted as of November 16, 2011. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A).

### BACKGROUND FACTS

Debtor filed her chapter 7 bankruptcy petition on May 4, 2009. She received her discharge on August 13, 2009, and her bankruptcy case was closed on September 4, 2009. No creditor, including the County of Contra Costa (the "County"), filed a proof of claim in the case, and the chapter 7 trustee filed a Report of No Distribution on July 30, 2009.

1          Prior to the bankruptcy, Debtor had been involved in two separate proceedings in the state
2    court, in both of which the County was a party.  In the criminal proceeding, the County
3    prosecuted Debtor for murder in the death of Debtor's husband in 2002.  In 2005, in order to
4    reimburse the County for the legal expenses and costs for Debtor's legal assistance in the defense
5    of her criminal case, Debtor executed a promissory note in favor of the County, secured by a
6    deed of trust granting the County a security interest in her home.  The note and deed of trust did
7    not set an amount for the debt but stated it as a sum fixed by the Superior Court for the County of
8    Contra Costa, which served as the trustee on the deed of trust.  Almost immediately after Debtor
9    executed the deed of trust, it was properly recorded with the Contra Costa County Recorder's
10   Office.

11         Debtor was found guilty in 2007.  After the trial and sentencing phase, the County filed a
12   motion seeking an order requiring Debtor to reimburse the County for the legal expenses.  The
13   County argued that Debtor had both a contractual obligation under the promissory note and a
14   statutory obligation under California Penal Code § 987.8 to reimburse the County.  On
15   September 20, 2007, after a three-day hearing, the court entered an order, which found that
16   Debtor was required to repay the County and ordered that the lien, established by the deed of
17   trust, be set at $212,033.31, an amount representing the costs and expenses of Debtor's legal
18   assistance provided by the County (the "Original Reimbursement Order").  Debtor appealed her
19   conviction and also appealed the Original Reimbursement Order.  The appeal was pending at the
20   time of the bankruptcy filing.

21         At the same time as the criminal proceeding, Debtor was also involved in a civil
22   proceeding in state court.  The estate of Debtor's husband filed a civil complaint against Debtor
23   to determine the estate's right to partition the family home owned by Debtor and Debtor's
24   husband.  On March 17, 2006, the state civil court granted summary judgment to the estate and
25   found that it had the right to partition the property (the "Interlocutory Judgment").  The court also
26   ordered that a referee be appointed to determine whether the property should be sold.

27         Later, after the appointed referee submitted a report to the court, the court entered an
28   order confirming the sale of the property and approving the referee's report which determined the

costs and claims to be paid from the sale proceeds (the "Sale Confirmation Order").   In its order, the court also determined that Debtor's interest in the property was actually an interest belonging to a inter vivos revocable trust created by Debtor, with the Debtor as trustor, trustee, and beneficiary.  Because of this, the court determined the trust property was subject to the claims of Debtor's creditors pursuant to California Probate Code § 18200.  Although the amount of the claims were still to be determined at a later hearing, the referee concluded that the County and Ivan Golde held claims against Debtor's interest in the soon-to-be-sold property.

On December 18, 2007, three months after the entry of the Original Reimbursement Order in the state criminal court, the County submitted a claim to the state court in the civil proceeding, stating that it held a lien against Debtor's property based on its promissory note, deed of trust, and Original Reimbursement Order providing it with a $212,033.31 claim.  Attached to its submitted claim was the Original Reimbursement Order as evidence of the lien amount.  On February 1, 2008, the court entered another order, which determined the specific distributions of the sale proceeds to be made by the referee (the "Distribution Order").  First, expenses of the sale, costs of partition, and joint encumbrances were paid.  The remaining sale proceeds after these distributions were equally divided between Debtor and the estate of Debtor's husband, with each party's share being $200,019.09.  However, the court found that the County and Ivan Gold were lienholders entitled to Debtor's share of the proceeds.  Of the $200,019.09, the County would receive $192,338.09 for its claim, and Ivan Golde would receive $7,681.00 for his claim.  No proceeds remained to distribute to Debtor.  On February 2, 2008, the County received a check from the referee for $192,338.09.  No appeal was taken by Debtor in the civil proceeding, and more than a year later, Debtor filed her bankruptcy petition.

Although the civil proceeding had concluded, the criminal proceeding remained pending at the time of the bankruptcy filing.  After the entry of discharge, the County proceeded with the appeal.  On December 13, 2010, the state appellate court, in its published decision, affirmed Debtor's conviction but vacated the Original Reimbursement Order and remanded the matter for further hearing (the "Appellate Decision").  The appellate court found that the lower court failed to comply with California Penal Code § 987.8 by failing to provide a hearing on Debtor's present

3

1    ability to pay.  The case was remanded to the lower court to determine the sole issue of Debtor's
2    ability to pay and to enter an appropriate order in accordance with that determination.  On
3    remand, the state criminal court found that Debtor did have the ability to pay at the time of
4    sentencing, and therefore ordered that the County retain the sale proceeds that it already received
5    (the "Second Reimbursement Order").

6         Debtor moved to reopen this bankruptcy case to challenge the County's post-discharge
7    actions in July 2011, and the case was reopened.  Debtor has filed a number of papers, requesting
8    various forms of relief.  Such papers include an Application to Court to Assert Jurisdiction over
9    Assets Against Claimants in Bankruptcy Case on July 1 (Docket #58), a Request for Enjoinder to
10   Creditor and Inferior Court on July 7 (Docket #62), a Motion to Avoid Lien on September 12
11   (Docket #90), and a Supplemental Brief in Support of Debtor's Request for Injunction on
12   October 17 (Docket #109).  The County has properly filed oppositions to Debtor's requested
13   relief.  After a number of hearings, the court took this matter under submission on November 16,
14   2011.

15                                **DISCUSSION**

16        Given Debtor's status as a pro se litigant, her papers do not conform to the usual form of
17   motions.  However, looking to the substance of Debtor's papers, the court finds it proper to
18   consider Debtor's requested forms of relief as (1) a motion for injunctive relief or other relief for
19   violation of the discharge injunction, and (2) a motion to avoid a judicial lien.  At the core of her
20   arguments, Debtor believes that the County is in unlawful possession of the sale proceeds from
21   the sale of her property, based on either bankruptcy law or state law.  The court's decision will
22   address each issue that Debtor has raised.

23   **Nondischargeability under § 523(a)**

24        Section 523(a) excepts various types of debts from a discharge granted under § 727.
25   Generally, the effect is that if a debt is not discharged under § 523(a), the discharge injunction of
26   § 524(a) is inapplicable to that particular debt.  Here, the County has not raised any § 523(a)
27   exceptions as a defense to its continuation of the criminal proceeding against Debtor post-
28

                                        4

1 | discharge. However, as the court believes it is an important consideration, the court will, sua
2 | sponte, determine whether any exception applies.

3 | Of the 21 categories of excepted debts under § 523(a), three may be applicable in this
4 | case: (1) Fines, penalties, and forfeitures under § 523(a)(7); (2) federal restitution orders under §
5 | 523(a)(13); and (3) filing fees, court costs, and expenses in civil actions and appeals from
6 | prisoners under § 523(a)(17).

7 | Of the three excepted debts mentioned, the court can easily dismiss the last two. First, §
8 | 523(a)(13) makes nondischargeable debts "for any payment of an order of restitution issued
9 | under title 18, United States Code." By its plain language, the exception does not apply to an
10 | order issued in a state criminal court. Since the Second Reimbursement Order sought by the
11 | County came from the *state* criminal court applying California Penal Code § 987.8, a *state* law,
12 | the County cannot rely on § 523(a)(13).

13 | Second, § 523(a)(17) excepts from discharge any debt "for a fee imposed on a prisoner by
14 | any court for the filing of a case, motion, complaint, or appeal, or for other costs and expenses
15 | assessed with respect to such filing." This exception, too, by its terms, does not apply in this
16 | case. Section 523(a)(17) deals with a prisoner's fees, costs, and expenses, but those costs must
17 | have been incurred only for filing court papers and only in a civil proceeding. Although Debtor
18 | is a prisoner, Debtor's expenses that the County seek to retain relate only to her legal
19 | representation and were incurred only in the criminal prosecution against her.

20 | Lastly, the first mentioned exception, § 523(a)(7), requires a much more in-depth
21 | analysis. Section 523(a)(7) makes nondischargeable a debt "to the extent such debt is for a fine,
22 | penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not
23 | compensation for actual pecuniary loss." To come within the terms of § 523(a)(7), the debt must
24 | first be payable to and for the benefit of a governmental unit. Although a "county" is not
25 | explicitly included as a "governmental unit" under § 101(27), the catch-all phrase "or other
26 | foreign or domestic governments" is read broadly to include *all* foreign and domestic
27 | governments at all levels. *See Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055, 1057 (9th
28 |

5

Cir. 2004). The County thus qualifies as a governmental unit. Debtor's debt, the reimbursement of legal expenses incurred by the County, is indeed payable and for the benefit of the County.

The more important inquiry, however, is whether this debt is a "fine, penalty, or forfeiture . . . and is not compensation for actual pecuniary loss." The court must determine whether the debt is penal or compensatory in nature. *See State Bar of California v. Taggart (In re Taggart)*, 249 F.3d 987, 994 (9th Cir. 2001), *superseded by statute on other grounds*, Act of Sept. 8, 2003, ch. 334, 2003 Cal. Stat., *as recognized in State Bar of California v. Findley (In re Findley)*, 593 F.3d 1048 (9th Cir. 2010); *see also Kelly v. Robinson*, 479 U.S. 36, 51 (1986) (noting that § 523(a)(7) "creates a broad exception for all *penal* sanctions, whether they be dominated fines, penalties, or forfeitures" (emphasis added)). "Penalties" that are compensatory in nature are dischargeable.

Here, California Penal Code § 987.8 governed Debtor's statutory obligation to the County. While the statute arises under the state's penal code, the statute is more appropriately characterized as a recoupment, not a punitive, statute. This is supported by the purpose of this statute, which is to allow counties to replenish their treasuries from the pockets of those who directly benefitted from the county expenditures. *People v. Amor*, 12 Cal. 3d 20, 27 (1974) (citing *Rinaldi v. Yeager*, 384 U.S. 305, 309 (1966)). Such a purpose can only be described as being compensatory in nature. Further, the fact that the statutory obligation to reimburse the county is determined by the criminal defendant's present ability to pay, and not by the criminal conviction of such person, also supports the conclusion that the debt is "compensation for actual pecuniary loss" by the County. Therefore, the court finds that § 523(a)(7) is also inapplicable to a debt arising under California Penal Code § 987.8.

**Violation of the Discharge Injunction under § 524(a)**

A discharge "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under [§ 727] . . . whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(1). It also "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover or offset any [debt discharged under §

6

1  727] as a personal liability of the debtor, whether or not discharge of such debt is waived." 11
2  U.S.C. § 524(a)(2). Here, Debtor's discharge was entered on August 13, 2009. However, the
3  County proceeded with the criminal litigation on appeal and on remand, including obtaining a
4  new order from the state court, and continued to retain the sale proceeds after the discharge was
5  entered. The court must therefore determine whether the County's post-discharge actions and the
6  various state court orders violate the discharge injunction, and if so, what is their effect on the
7  rights of the parties and this bankruptcy case.

8        Of particular importance in this analysis, are the two judicial proceedings in the state
9  court and the orders entered therein. To review, the relevant orders from the state criminal
10 proceeding are: (1) the trial court's Original Reimbursement Order entered pre-petition and later
11 vacated post-petition, which ordered Debtor's reimbursement of the County's legal expenses and
12 established the lien amount; (2) the appellate court's post-discharge Appellate Decision that
13 vacated the Original Reimbursement Order and remanded the matter for further hearing due to a
14 substantive and procedural defect; and (3) the trial court's resulting Second Reimbursement
15 Order after the hearing on remand entered post-discharge, which ultimately found Debtor liable
16 for the County's legal expenses based on her ability to pay the expenses.

17       From the state civil proceeding, the relevant orders include: (4) the Interlocutory
18 Judgment granting summary judgment as to the estate of Debtor's husband's right to partition the
19 property; (5) the Sale Confirmation Order confirming the sale of the property and approving the
20 appointed referee's report that determined the costs and claims to be paid from the sale proceeds;
21 and (6) the Distribution Order authorizing distribution of sale proceeds to the parties holding
22 claims against the property. All three orders in the civil proceedings were entered pre-petition.

23       *The County's Post-Discharge Litigation and Entry of the Second Reimbursement Order*

24       A discharge does not erase a claim but "extinguishes only one mode of enforcing a
25 claim—namely, an action against the debtor *in personam*—while leaving intact
26 another—namely, an action against the debtor *in rem*." *Johnson v. Home State Bank*, 501 U.S.
27 78, 84 (1991). A lien survives a discharge, allowing a creditor to proceed against a debtor in rem
28 after the entry of discharge. *See id.* at 82–83.

7

1       Here, after the discharge was entered, the County continued criminal proceedings against
2   Debtor on appeal and then on remand without obtaining permission from this court to do so.
3   While part of that appeal dealt with the criminal conviction, it also dealt with the validity of a
4   debt, Debtor's statutory obligation to the County under California Penal Code 987.8.  The
5   County ultimately obtained the Second Reimbursement Order from the state trial court after the
6   state appellate court vacated the Original Reimbursement Order and remanded the matter for
7   further hearing.  The Second Reimbursement Order found that Debtor had the present ability to
8   reimburse the County for legal expenses, and ordered that the County retain the sale proceeds
9   that it already received from the civil proceeding years ago in satisfaction of that debt.  While the
10  County obtained the sale proceeds due to holding a valid lien interest in Debtor's property from
11  its deed of trust (discussed thoroughly below), it cannot be said that the County was proceeding
12  against the Debtor in rem in any part of the criminal proceedings.

13      The County never recorded an abstract of judgment when it obtained the Original
14  Reimbursement Order pre-petition.  Therefore, the County never had a judgment lien at the time
15  of Debtor's bankruptcy filing or at any other time.  Without a valid lien interest at the time of
16  filing, the County had no way of proceeding against Debtor in rem after the entry of discharge.
17  *See In re Paeplow*, 972 F.2d 730, 735 (7th Cir. 1992) ("Congress did intent to permit such [post-
18  discharge] actions, but *only* to the extent a creditor first obtained a judgment lien against a
19  debtor's property prior to discharge.").  Even if the County had a valid judgment lien, the
20  Original Reimbursement Order, upon which a lien would be based on, was subsequently vacated
21  by the state appellate court.  The vacation of that order would have eliminated any judgment lien
22  as well.  *See Lantz v. Vai*, 199 Cal. 190, 193 (1926).

23      Additionally, the County cannot rely on the language of the Second Reimbursement
24  Order to argue that it was proceeding against Debtor in rem.  Although the state court ultimately
25  ordered that the County retain the sale proceeds, the purpose of the criminal proceeding on
26  remand was not to determine the County's in rem rights against Debtor's property.  Rather, the
27  purpose was to determine whether Debtor had the present financial ability to reimburse the
28  County for legal expenses.  That determination of a criminal defendant's present ability to pay

8

1  was a prerequisite in attaching personal liability to the defendant for the legal expenses paid for
2  by the county, an expense usually footed by the taxpayers. *See* CAL. PENAL CODE § 987.8(b).
3  The language of the Second Reimbursement Order that ordered the County to retain the sale
4  proceeds only reflected the facts at the time of the entry of the order and was not intended to be a
5  determination of the County's in rem rights in the sale proceeds. It is therefore improper to
6  characterize the post-discharge criminal proceeding as an in rem action.

7      Given that the County proceeded against Debtor in personam, and not against Debtor's
8  property in rem, after entry of the discharge without court approval, the County's actions violate
9  the discharge injunction under § 524(a)(2). The state court's entry of the Second Reimbursement
10 Order, the result of the County's improper post-discharge actions, therefore also violates the
11 discharge injunction. As a result, the Second Reimbursement Order is void as a violation of §
12 524(a)(1).

13      *Retention of the Sale Proceeds*

14      In addition to the County's continuation of the criminal proceedings, Debtor believes that
15 the County's continued possession of the sale proceeds constitutes an act to collect or recover a
16 discharged debt in violation of § 524(a)(2) given that the Original Reimbursement Order was
17 vacated and the Second Reimbursement Order is void for violating the discharge injunction.
18 Arguably, without a valid order determining Debtor's liability on which the County can rely, the
19 County has no legal right to the continued possession of the sale proceeds.

20      With respect to this act, however, the only way that the County may be considered in
21 violation of the discharge injunction is if it obtained the sale proceeds pursuant to its vacated
22 Original Reimbursement Order or its now-void Second Reimbursement Order. A review of the
23 evidence shows that this did not occur. Rather, the County received the sale proceeds by a valid
24 order from the state court in the civil proceeding, which granted the County an interest in the
25 proceeds due to it holding a security interest (the deed of trust securing the promissory note)
26 against the sold property.

27      The sale proceeds arose from the sale of Debtor's former home, and that sale occurred
28 pursuant to a civil proceeding initiated by the estate of Debtor's husband in order to partition the

9

1  property.  This proceeding was conducted pursuant to California Code of Civil Procedure §§
2  872.010–874.240 (governing the partition of real property).  Per California Code of Civil
3  Procedure § 873.810, the state court distributed the sale proceeds in the priority required by the
4  statute.  After expenses of the sale, costs of partition, and joint encumbrances were paid, the
5  remaining sale proceeds were divided equally between Debtor and the estate of Debtor's
6  husband.  For Debtor, half of the remaining sale proceeds would have gone to an inter vivos
7  revocable trust controlled by Debtor, but Debtor's trust was subject to the claims of her creditors.
8  *See* CAL. PROB. CODE § 18200.

9       The  court in the civil proceeding then determined, in its Distribution Order, that Debtor's
10 share in the sale proceeds would be subject to the claims of two valid lienholders, one being the
11 County.  Given that Debtor's share was less than the amount of the liens encumbering Debtor's
12 interest, no proceeds were left for Debtor after distributions were made to the lienholders.  In
13 determining that the County was a valid lienholder and was entitled to the sale proceeds over
14 Debtor, the state court, necessarily, made two findings: (1) That the County was a party holding a
15 lien against the property; and (2) that based on the amount of its lien, the County was entitled to
16 $192,338.09 from the remaining sale proceeds.  However, the Original Reimbursement Order,
17 which was valid at the time of the civil court's Distribution Order, did not create the County's
18 lien rights.

19      While the Original Reimbursement Order did state that "[Debtor] shall repay the County
20 $212,033.31 *by way of lien*," the order did not grant the County a security interest in the subject
21 property.  As California Penal Code § 987.8, the relevant criminal statute requiring the
22 reimbursement of legal expenses, provides,

23       The court may impose a lien on any real property owned by the defendant, or in
          which the defendant has an interest to the extent permitted by law.  The *lien . . .*
24       *shall be recorded with the county recorder* in the county or counties in which the
          property is located . . . .  The county shall have the right to enforce its lien for the
25       payment of providing legal assistance to an indigent defendant in the same manner
          as other lienholders by way of attachment . . . .  *The order to pay all or part of the*
26       *costs may be enforced in the manner provided for enforcement of money*
          *judgments generally* but may not be enforced by contempt.
27

28 CAL. PENAL CODE § 987.8(a) & (e) (emphasis added).

                                                10

1    Because it is enforced like a civil money judgment, an order pursuant to California Penal
2  Code § 987.8 must be recorded to be enforceable.   A money judgment does not automatically
3  constitute a lien on anything in California, absent further actions by the judgment creditor.
4  *Aldasoro v. Kennerson*, 915 F. Supp. 188, 191 (S.D. Cal. 1995). A judgment, as an unrecorded
5  document, has no legal effect on property. *Tassone v. Tovar*, 28 Cal. App. 4th 765, 769 (1994).
6  Rather, a judgment lien on real property is created by recording an abstract of a money judgment
7  with the county recorder. CAL. CIV. PROC. CODE § 697.310(a).

8    Here, the County failed to record an abstract of judgment with the recorder's office (likely
9  because it believed its deed of trust secured its security interest in the property).  Therefore, its
10  right to receive a distribution of the sale proceeds could not have arisen from the Original
11  Reimbursement Order.  Since that order did not create a lien on Debtor's property, the County
12  had no claim to the property on that basis.

13    Rather, it was the promissory note secured by the deed of trust that provided the County
14  with a claim against the property and the resulting sale proceeds in the civil proceeding.
15  Although Debtor was obligated to the County for only one debt (i.e., reimbursement for legal
16  services), the County had two mechanisms that it could potentially rely on in seeking
17  reimbursement from Debtor: (1) The contractual obligation based on the promissory note secured
18  by a deed of trust; and (2) the statutory obligation pursuant to California Penal Code § 987.8.

19    The Original Reimbursement Order would have provided the County with only an
20  unsecured claim in the civil proceeding, with no security interest in the sold property and that
21  would have provided the County with a lower priority interest to the sale proceeds than Debtor.
22  Since the state court did grant the County with a higher priority interest than Debtor in the sale
23  proceeds due to the County's status as a lienholder, the court must have necessarily determined
24  that the County's lien interest arose from its deed of trust and promissory note.  As long as the
25  civil orders remain valid state court orders, the County's rights to those sale proceeds pursuant to
26  those orders remain intact, and Debtor continues to possess no interest in the property or the
27  proceeds.

28

11

1    *Civil Orders*

2        In requesting the turnover of the sale proceeds, Debtor's papers also challenge the validity

3    of the orders from the civil proceeding on various substantive and procedural grounds.  Such

4    grounds include lack of due process (lack of notice or opportunity to be heard), the court's failure

5    to recognize Debtor's homestead exemption, duress in signing the promissory note, and

6    rescission of the deed of trust.  If any challenge proves to be meritorious, then Debtor's resulting

7    relief could be the vacation or modification of those orders and the possible return of the sale

8    proceeds to her.  However, none of those challenges to the civil orders are proper for the

9    bankruptcy court's consideration.  In essence, Debtor is collaterally attacking the state court

10   orders in federal court by requesting that the bankruptcy court review, vacate, or modify the state

11   court's civil orders.

12       In this instance, the bankruptcy court's ability to address Debtor's requested relief is

13   precluded by the *Rooker-Feldman* doctrine, which limits a federal court's ability to directly

14   review a state court judgment on the merits.  *See D.C. Court of Appeals v. Feldman*, 460 U.S.

15   462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).  The doctrine is limited to "cases

16   brought by state-court losers complaining of injuries caused by state-court judgments rendered

17   before [a lower federal] court proceedings commenced and inviting [the lower federal] court

18   review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544

19   U.S. 280, 284 (2005).  Since Debtor's requested relief would require this court to review and

20   reject the state court's civil orders, it falls within the scope of the doctrine.

21       In the bankruptcy context, exceptions to the *Rooker-Feldman* doctrine do exist.  The bar

22   to judicial review is inapplicable when the state court judgments are *void ab initio*, such as those

23   entered in violation of the automatic stay or in violation of the discharge injunction.  *See Gruntz*

24   *v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1083 (9th Cir. 2000); *Pavelich v.*

25   *McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich)*, 229 B.R. 777, 782

26   (B.A.P. 9th Cir. 1999).  "The bankruptcy court, of necessity, must be able to ascertain the extent

27   to which [a state court judgment] is void under § 524(a)(1) as an essential element of determining

28   whether the § 524(a)(2) discharge injunction has been violated." *Id.*  Thus, an exception to the

12

1   *Rooker-Feldman* doctrine applies allowing the bankruptcy court to review a state court judgment
2   when that judgment is void as violating the discharge injunction. *Id.* (citing *Kalb v. Feuerstein*,
3   308 U.S. 433, 438–40 (1940)).  The rationale for the exception is that since "a void judgment is
4   null and without effect, the vacating of such a judgment is merely a formality and does not
5   intrude upon the notion of mutual respect in federal-state interests." *Id.* (citation omitted)
6   (internal quotation marks omitted).

7          This is precisely what this court did above in deciding that the Second Reimbursement
8   Order was void.  However, Debtor's request with regards to the civil orders is a different issue.
9   Whether the Sale Confirmation and Distribution Orders are void as violating the discharge
10  injunction is a matter properly before the bankruptcy court.  However, whether those orders are
11  erroneous based on state law grounds and subject to vacation is not within the jurisdiction of this
12  court.  Such relief can only be requested in the state court.

13         In deciding whether the civil orders are void as violating § 524(a)(1), the answer is no.
14  While the civil orders were entered pre-petition and § 524(a)(1) is quite broad by voiding "any
15  judgment *at any time* obtained," the statute only voids a judgment "to the extent that such
16  judgment is a determination of the *personal liability of the debtor* with respect to any debt
17  discharged." § 524(a)(1) (emphasis added).  The civil orders granting the County a right to the
18  sale proceeds was not a determination of Debtor's in personam liability, but rather her in rem
19  liability, as the state court determined that the County had a valid lien interest entitling it to the
20  sale proceeds.

21         Debtor may also believe that Distribution Order, which found that the County was
22  entitled to $192,338.09 in the sale proceeds, determined this amount based the later-vacated
23  Original Reimbursement Order (which the County submitted to the civil court to determine its
24  claim amount).  Arguably, an order that relies on an order later found void should also be void or
25  at least erroneous.  However, as the Supreme Court has stated, "If the [state court] decision was
26  wrong, that did not make the judgment void, but merely left it open to reversal or modification in
27  an appropriate and timely appellate proceeding.  Unless and until so reversed or modified, it
28  would be an effective and conclusive adjudication." *Rooker*, 263 U.S. at 415.  A valid judgment

13

1    (or order) is otherwise entitled to full faith and credit in a federal court. *See Pavelich*, 229 B.R.

2    at 782; *see also* 28 U.S.C. § 1738 (full faith and credit statute).

3         If Debtor goes back to the state court to collaterally attack the civil orders and the state

4    court ultimately reverses or vacates those orders, Debtor may return to this court to modify a

5    judgment made here. In the federal courts, a party may file a motion for relief from a final

6    judgment on the grounds that the judgment was "based on an earlier judgment that has been

7    reversed or vacated." *See* FED. R. CIV. P. 60(b)(5), *incorporated by* FED. R. BANKR. P. 9024.

8    However, unless and until that occurs, the civil orders remain valid state court orders that this

9    court cannot upset.

10        *Damages for Violation of the Discharge Injunction*

11        Contempt proceedings are the traditional method for addressing a violation of the

12   discharge injunction. *Walls v. Wells Fargo Bank*, 276 F.3d 502, 507 (9th Cir. 2002).

13   "Compensatory civil contempt allows an aggrieved debtor to obtain compensatory damages,

14   attorneys [sic] fees, and the offending creditor's compliance with the discharge injunction." *Id.*

15   In reviewing the County's actions, only its continuation of the criminal proceeding, but limited to

16   the part of the proceeding relating to California Penal Code § 987.8, violated the discharge

17   injunction. Although the County knew of Debtor's bankruptcy and subsequent discharge but

18   believed that it was not affected by the bankruptcy, the court finds that such actions did not harm

19   Debtor. The County is not liable for any compensatory damages to Debtor.

20   **Lien Avoidance Under § 522(f)**

21        Debtor also moves to avoid a lien pursuant to § 522(f). Section 522(f) allows a debtor to

22   avoid the fixing of a judicial lien on a debtor's interest in property to the extent that such lien

23   impairs an exemption to which the debtor would have been entitled to under § 522(b). A judicial

24   lien, defined by § 101(36), means a "lien obtained by judgment, levy, sequestration, or other legal

25   or equitable process or proceeding." For exemptions, § 522(b) permits a debtor to exempt

26   certain property from property of the estate, and property of the estate, defined by § 541, includes

27   "all legal or equitable interest of the debtor in property as of the commencement of the case."

28

14

1    Here, Debtor may not avoid a lien under § 522(f) for failing to establish two prerequisites.

2 First, the County's lien interest was not a result of a judicial (or judgment) lien as the County

3 failed to record an abstract of judgment. *See* CAL. CIV. PROC. CODE § 697.310(a). Rather, as

4 discussed above, the County's lien interest was a result of its deed of trust, a consensual lien

5 against Debtor's property.

6    Second, Debtor did not hold an interest in either the sold real property or the resulting

7 sale proceeds at the time of filing the petition. The sale extinguished any interest that Debtor had

8 in the property, and the court determined that the County and another creditor held claims to the

9 sale proceeds having priority over any interest she may have had in the proceeds. *See* CAL. CIV.

10 PROC. CODE § 873.810 ("The court shall [in a partition proceeding] order the proceeds of sale . . .

11 to be paid, transferred, deposited in court, placed in trust . . . to or for the benefit of the persons in

12 interest entitled thereto."); *see also* CAL. CIV. PROC. CODE § 874.240 ("A [court-ordered]

13 conveyance or transfer [in a partition proceeding] . . . is binding and conclusive."). Since no

14 proceeds were available after distribution to her two creditors, Debtor was entitled to and

15 received nothing from the sale of her property.

16                              **CONCLUSION**

17    For the foregoing reasons, the court will issue a separate order denying the relief

18 requested by Debtor.

19

Dated:

Jan 31, 2012

United States Bankruptcy Judge

24
25
26
27
28

15